Docket Number 21-56381

D.C. No 3:19-cv-01128-WQH-BGS
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

VIRGIL M. LORENZO,

*Plaintiff-Appellant*,

*v.*

PATRICK SHANAHAN, Acting Secretary,
Department of Defense

*Defendant-Appellee*.

═══════════════════════════════

## APPELLANT'S OPENING BRIEF

═══════════════════════════════

ON APPEAL FROM THE UNITED STATES DISTRICT COURT,
SOUTHERN DISTRICT OF CALIFORNIA, THE HONORABLE
WILLIAM Q. HAYES, UNITED STATES DISTRICT JUDGE

RANDY BAKER
Attorney at Law
600 N. 36th Street, Suite 406
Seattle, Washington 98103
(206) 325-3995 — Telephone
(206) 681-9991— Facsimile
email – rpb@bakerappeal.com

ATTORNEY FOR APPELLANT VIRGIL M. LORENZO

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iv

INTRODUCTION ........................................................................ 1

I.  APPELLATE JURISDICTION ...................................................... 3

II.  ISSUES PRESENTED ................................................................ 3

III.  STATEMENT OF THE CASE .................................................... 4

   A.  Procedural Background ........................................................ 4

   B. Statement of Facts ............................................................... 5

IV.  SUMMARY OF ARGUMENT .................................................... 8

1. Plaintiff's Circumstantial Evidence of Discrimination Based on His National Origin Precluded Summary Judgment ............................................. 8

2.  Application of the McDonnell Douglas Formula to Plaintiff's Evidence of National Origin Discrimination Precluded Summary Judgment ............ 13

3.  Plaintiff's Evidence Precluded Summary Judgment on His Claim of Discrimination Under the Rehabilitation Act ................................... 14

V.  STANDARD OF REVIEW ......................................................... 15

VI.  ARGUMENT ......................................................................... 16

A.  A REASONABLE JURY COULD HAVE FOUND THAT MR. LORENZO, WHO IS FILIPINO, WAS TERMINATED FROM HIS TEACHING POSITION TO ACCOMMODATE THE BIAS OF A PARENT AGAINST HIS NATIONAL ORIGIN ..................................... 16

i

# TABLE OF CONTENTS

**Page**

1.   Plaintiff's Circumstantial Evidence Precluded Summary Judgment ..... 20

a.  Grade's Instructing Plaintiff to Meet With Ms. Jump to Discuss Her "Concerns" About His Accent Was Circumstantial Evidence Grade Acted to Accommodate Jump's Bias Against Plaintiff's National Origin ........... 20

b.  Grade's Terminating Lorenzo Less Than Three Months After Indicating His Intent to Enforce Jump's Bias Against Him Authorized the Jury to Find the Termination Was Discriminatory; That the Termination Closely Followed A Meeting at Which Jump Became Irate With Plaintiff Underscores that Conclusion .................................................................... 23

c.  Grade's Questionable Explanation for Terminating Plaintiff Before Completion of the Improvement Plan, His Denying Plaintiff's Contention that He Implemented All Grade's Suggestions, His Requiring More Work of Plaintiff Than Plaintiff's Predecessor, and Plaintiff's Teaching Accomplishments Each Authorize Finding Defendant's Justification to Be Pretextual ........................................................................................... 27

d.   The District Court's Holding Plaintiff Failed To Adduce Evidence to Support an Inference of Discrimination Based on His National Origin Disregards the Evidence Defendant Fired Plaintiff in Order to Accommodate the Bias of Ms. Jump and the Evidence Defendant's Justification for the Termination Was Unworthy of Credence ................... 32

2.  Plaintiff Established a Case of Discrimination Based on the McDonnell Douglas Framework ......................................................................... 35

B.  A REASONABLE JURY COULD HAVE FOUND THAT MR. LORENZO WAS TERMINATED FROM HIS TEACHING POSITION, BECAUSE OF HIS HEARING IMPAIRMENT OR THE PERCEPTION HIS HEARING IS IMPAIRED .................................................................. 38

# TABLE OF CONTENTS

**Page**

CONCLUSION ............................................................................................. 43

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page**

## CASES:

Aragon v. Republic Silver State Disposal Inc.,
292 F.3d 654 (9th Cir. 2002) ................................................................ 13, 35

Arriaza v. Leggett & Platt, Inc., No. CV-09-2242, 2009 WL 10674330
(C.D. Cal. Nov. 9, 2009) ................................................................................ 23

Bell v. Clackamas County, 341 F.3d 858 (9th Cir. 2003) ............................. 24

Boose v. Tri-County Metropolitan Trans. Dist. of Oregon, 587 F.3d 997
(9th Cir. 2009) ............................................................................................... 39

Bostock v. Clayton County Georgia, __U.S. __, 140 S.Ct. 1731,
207 L.Ed.2d 218 (2021) ............................................................................. 9, 17

Buhrman v. Aureus Medical Group, 519 F.Supp.3d 923 (D. Colo. 2021) .... 24

Burns v. AAF McQuay, Inc., 96 F.3d 728 (4th Cir. 1996) ............................ 28

Chaney v. Plainfield Healthcare Center, 612 F.3d 908 (7th Cir. 2010) ......... 18

Coons v. Sec'y of the Treasury, 383 F.3d 879 (9th Cir. 2004) ...................... 39

Cordova v. State Farm Insurance Cos., 124 F.3d 1145
(9th Cir. 1997) ................................................................................. 19, 20, 34

Coszalter v. City of Salem, 320 F.3d 968 (9th Cir. 2003) ................ 24, 25, 28

Coughlan v. Am. Seafoods, Co., LLC, 413 F.3d 1090 (9th Cir. 2007) ......... 32

Curry v. Contra Costa County, No. 12-cv-03940, 2014 WL 1724431
(N.D. Cal. April 30, 2014) ............................................................................ 21

# TABLE OF AUTHORITIES

**Page**

## CASES:

Davis v. Team Electric Co., 520 F.3d 1080 (9th Cir. 2008) ............... 21, 37,42

Dominguez-Curry v. Nevada Transport Dept., 424 F.3d 1027
(9th Cir. 2005) ..................................................................... 19, 22

Donaire v. NME Hospital, Inc.,  27 F.3d 507 (11th Cir. 1994) .................... 35

Fernandez v. Wynn Oil Co., 653 F.2d 1273 (9th Cir. 1981) .................. 18, 23

Fonseca v. Food Services of Arizona, Inc., 374 F.3d 840
(9th Cir. 2004) ............................................................... 9, 17, 20, 21

Fragrante v. City and County of Honolulu, 888 F.2d 591
(9th Cir. 1989) ............................................................................ 20

Gerdom v. Continental Airlines, Inc., 692 F.2d 602 (9th Cir. 1982) ............. 18

Goldsmith v. City of Atmore, 996 F.2d 1155 (11th Cir. 1993)..................... 27

Goodman v. Lukens Steel Co., 482 U.S. 656 (1987) .................................. 18

Hamed v. Macy's West Stores, Inc., No. c-10-2790, 2011 WL 1935937
(N.D. Cal. May 20, 2012) ............................................................. 21

Hernandez v. Spacelabs Medical, Inc., 343 F.3d 1107 (9th Cir. 2003) ........ 26

Humphrey v. Memorial Hospitals Ass'n, 239 F.3d 1128 (9th Cir. 2001) 14, 41

Juaregri v. City of Glendale, 852 F.2d 1128 (9th Cir. 1988) .................. 28, 29

Jute v. Sundstrand Corp., 420 F.3d 166, 175 (2nd Cir. 2005) ...................... 27

# TABLE OF AUTHORITIES

**Page**

**CASES:**

Kennedy v. Applause, 90 F.3d 1477 (9th Cir. 1996) ............................... 40, 42

Las Vegas Sand, LLC v. Hehme, 632 F.3d 526 (9th Cir. 2011) ................... 15

Lindahl v. Air France, 930 F.2d 1434 (9th Cir. 1991) ................................ 22

Lowe v. City of Monrovia, 775 F.2d 998 (9th Cir. 1985) ............................ 22

MacDonald v. Eastern Wyoming Mental Health Center, 941 F.2d 1115
(10th Cir. 1991) ........................................ 36

Machado v. Real Estate Resources, LLC, No. 12-00544, 2013 WL 3944551
(July 30, 2013) ........................................ 20

Mayes v. Winco Holdings, Inc., 846 F.3d 1274 (9th Cir. 2017) ................... 22

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) ..................... 19, 20

McGinest v. GTE Services Corp., 360 F.3d 1103
(9th Cir. 2004) ........................................ 11, 19, 28, 29

Mustafa v. Clark, 157 F.3d 1169 (9th Cir. 1998) ........................................ 19

Passantino v. Johnson & Johnson Consumer Products, Inc.,
212 F.3d 493 (9th Cir. 2000) ........................................ 24, 25, 42

Peterson v. Hewlett Packard Co., 358 F.3d 599 (9th Cir. 2004) ....... 13, 35, 38

Reeves v. Sanderson Plumbing, 530 U.S. 133 (2000) .... 27, 28, 31, 34, 36, 37

Sampson v. Image 2000, Inc., No. 2:13-cv-01321, 2015 WL 1397118
(D. Nev. March 25, 2015) ........................................ 21

# TABLE OF AUTHORITIES

**Page**

Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)…………13, 35, 38

Thanongsinh v. Board of Educ., 462 F.3d 762 (7th Cir. 2006) ......... 17, 21, 22

Weil v. Citizens Telecom Services, LTD, 922 F.3d 993 (9th Cir. 2019) ....... 19

Williams v. G4S Secure Solutions (USA), Inc., No. ELH 10-3476, 2012 WL 1698282 (D. Md. May 11, 2012) ................................................................ 18

Wishkin v. Potter, 476 F.3d 180 (3d Cir. 2007) ............................................. 39

Yarborough v. Tower Oldsmobile, Inc., 789 F.2d 508 (7th Cir. 1986).......... 36

Yartzoff v. Thomas, 809 F.2d 1371 (9th Cir. 1987) ...................................... 23

## STATUTES:

28 U.S.C. § 1291 ............................................................................................. 3

29 U.S.C. § 794(a) ................................................................................. 3, 4, 39

42 U.S.C. § 2000e ................................................................................... 4, 17

## INTRODUCTION

Plaintiff Virgil Lorenzo, who is Filipino and suffers some hearing loss, was hired on a probationary basis by Principal Altorn Grade in August 2010 to teach science to students at Defendant Secretary of Defense's Lester Middle School in Okinawa, Japan. Although Lorenzo submitted ample evidence to authorize a reasonable jury to find both his national origin and his disability (or perception thereof) were "but for" causes of his subsequent termination, the district court mistakenly granted defendant's motion for summary judgment on plaintiff's respective claims for discrimination based on national origin under Title VII and on disability under the Rehabilitation Act.

That his national origin was a cause was shown by the fact that one month into Lorenzo's tenure, Principal Grade sent Lorenzo an email informing him that a student's parent, Ms Jump, had "concerns" about his accent, and that Lorenzo was to speak with her, which Lorenzo did. The parent informed Lorenzo she thought the decision to hire someone with his accent warranted explanation. Grade subsequently began interventions to correct alleged deficiencies in Lorenzo's performance.

In December 2010 Ms. Jump met again with Lorenzo. He suggested the problems Jump's child was having with the class might be the result of

1

her having caused him to miss considerable class time in order to take a vacation. Jump became irate. Grade terminated Lorenzo days later, which strongly suggested he did so in service of Ms. Jump's bias.

Grade asserted the termination was based on deficiencies in Lorenzo's performance -- unrelated to his accent or his hearing loss. Lorenzo substantially rebutted Grade's claims, thereby providing an additional reason to find them pretextual.

That his disability or perceived disability was a cause of the termination was shown by the fact that approximately one month after his hiring, Grade asked Lorenzo whether the rumor that he suffered hearing loss was true. Lorenzo confirmed that it was.

In November 2010, while Grade was observing Lorenzo conducting class, the cell phone of a student chimed. Due to his hearing impairment, Lorenzo was not able to immediately identify the student to whom the phone belonged. He coped by speaking in the general direction of the chimes, instructing the student to see him after class and continuing with the class. After class Lorenzo elicited the cooperation of another student to identify the owner of the phone, and confiscated it.

Grade again asked about plaintiff's hearing, complained about his failure to immediately confiscate the phone and was not satisfied with

Lorenzo's above summarized explanation. Lorenzo was terminated two weeks later. Grade's express animus towards Lorenzo at the manifestation of his hearing impairment, and his prompt termination of Lorenzo thereafter established reason to believe Lorenzo's hearing impairment was a cause of the termination.

## I. APPELLATE JURISDICTION

The district court had jurisdiction over this case pursuant to 42 U.S.C. sections 2000e et seq. and 29 U.S.C. § 794(a).[1] ER-179-181. Final judgment disposing of all claims against defendant was entered on October 29, 2021. ER-4; Fed. R. Civ. P. 54 (a). The judgment is appealable under 28 U.S.C. § 1291. Timely notice of appeal was filed on December 27, 2021. ER-183-184; Fed. R. App. P. 4.

## II. ISSUES PRESENTED

1. Did the district court err in holding plaintiff failed to raise a triable issue of fact that Defendant, Lloyd J Austin, Secretary, Department of Defense, terminated him because he is Filipono, in violation of Title VII, 42 U.S.C. § 2000e et seq.?

------

1. Plaintiff exhausted administrative remedies and timely filed this suit thereafter. ER-5 n. 2.

2.  Did the district court err in holding plaintiff failed to raise a triable issue of fact that Defendant, Lloyd J Austin, Secretary, Department of Defense, terminated him, because of his actual or perceived hearing impairment, in violation of the Rehabilitation Act, 29 U.S.C. § 794(a)?

### III.  STATEMENT OF THE CASE
#### A.  Procedural Background

On June 17, 2019 Plaintiff Virgil Lorenzo filed this case in U.S. District Court for the Southern District of California.  ER-176.  The complaint alleged that Defendant Patrick Shanahan,[2] Acting U.S. Secretary of Defense, had violated plaintiff's rights under Title VII (42 U.S.C. § 2000e et seq.), the Rehabilitation Act of 1973 and the Age Discrimination in Employment Act[3] by terminating him from his position as a middle school teacher.  ER-177-181.  On October 29, 2021 defendant's motion for summary judgment was granted as to all claims, and judgment was entered for the defendant.  ER-4, 11-17.  Notice of Appeal was filed on December 27, 2021.  ER-183-184.

_____

2. Since becoming Secretary of Defense on January 21, 2021, Lloyd J. Austin III has been substituted in as the defendant.  ER-5 n. 1.
3. Plaintiff subsequently withdrew his claim under the Age Discrimination in Employment Act.  ER-4 n.2.

4

## B. Statement of Facts

Plaintiff Virgil Lorenzo, who is Filipino and suffers some hearing loss, was hired by Principal Altorn Grade on August 20, 2010 to teach science to middle school students at Defendant Secretary of Defense's Lester Middle school in Okinawa, Japan. ER-29, 130. Lester Middle School is operated by Department of Defense Education Activities (hereinafter "DodEA"), which manages pre-kindergarten through 12th grade educational programs for families of United States service members.

Lorenzo, as a new DodEA educator, was hired on a provisional basis. ER-100 [23:16-25]. Provisional level educators are rated on five professional performance elements, each of which includes specific mandatory standards. ER-60-61, 121 [105:3-24]. Failure to satisfy any of the elements may result in the employee's receiving an "unacceptable" rating. ER-53, 55.

Plaintiff stated that in September 2010 Grade had asked him whether the rumor that he suffered hearing loss was true. ER-32. Plaintiff confirmed that it was. ER-32.

Principal Grade stated that in September he began to receive complaints about plaintiff's teaching from students and parents. ER-131. On September 13, 2010 Principal Grade sent Lorenzo an email directing him to speak with Ms Jump, a parent who had "concerns" about his accent and that

her son had difficulty understanding some of the concepts he was teaching. ER-32, 132. Plaintiff spoke with Jump. ER-32. During their meeting, Jump corrected his pronunciation and informed Lorenzo she thought the decision to hire someone with his accent warranted explanation. ER-32.

Thereafter, Grade said he received several additional complaints from parents and students about plaintiff's teaching. ER-131-132. Grade sent emails to plaintiff on October 12, 2010 and October 19, 2010 advising him of deficiencies in his grading practices. ER-132-133.

On October 27, 2010 Grade imposed an "Intervention Plan," a program of remedial supervision, on Lorenzo. ER-134. In establishing the plan with plaintiff, Grade focused on three DodEA performance elements, including "Monitoring and Assessing Student Achievement." ER-134. Grade also asked Lorenzo to communicate his grading procedures to parents and to communicate with the parents of failing students. ER-134.

Lorenzo stated that while Grade was observing him conduct a class in November 2010, the cell phone of a student chimed. ER-32. Due to his hearing impairment, Lorenzo was not able to identify the student to whom the phone belonged, and coped by speaking in the general direction of the phone, instructing the student to see him after class and continuing with the class.

ER-32-33.  After class Lorenzo elicited the cooperation of another student to identify the owner of the phone, and then confiscated the phone.  ER-33.

Grade again asked about plaintiff's hearing, complained about his failure to immediately confiscate the phone and was not satisfied with Lorenzo's above summarized explanation.  ER-33.

On November 18, 2010 Grade discovered that the formal Intervention Plan he had imposed on plaintiff was not available for provisional teachers.  ER-112 [70:1-4]  Grade offered to continue the intervention informally, and plaintiff agreed to proceed with the plan on that basis.  ER-112 [70:4-12]

In December 2010 Ms. Jump met again with Lorenzo.  ER-32. During the meeting plaintiff suggested her child's problems with the class might be the result of her having caused him to miss considerable class time in order to take a vacation.  ER-32.  Jump became irate. ER-32. Grade terminated Lorenzo days later.  ER-32, 164.

In his termination letter dated December 13, 2010 Grade stated Lorenzo was being terminated for failing to demonstrate acceptable performance in critical element 4 of the Department of Defense Dependents Schools (hereinafter "DoDDS") Performance Elements for Classroom Teachers.  ER-164.  Deficiencies cited in the letter included failure to consistently enter grades for students in "Gradebook" an online record system; failure include

activities in lessons that allowed students to analyze, synthesize and evaluate the objectives and standards he was trying to teach; and failure to adequately communicate with parents. ER-164.

In a subsequent termination conference with Lorenzo, Grade asserted he had failed to communicate with parents adequately, and that students were falling behind in science. ER-32. Plaintiff stated that these allegations mirrored those raised in the meeting earlier in the month during which Ms. Jump had become irate. ER-32.

## IV. SUMMARY OF ARGUMENT

Plaintiff raised a triable issue of fact both as to his claim that discrimination based on his Filipino nationality was a "but for cause" of defendant's terminating him from his middle school teaching position, in violation of Title VII, and that his actual or perceived disability (hearing impairment) also was a "but for cause" of the termination in violation of the Rehabilitation Act.

## 1. Plaintiff's Circumstantial Evidence of Discrimination Based on His National Origin Precluded Summary Judgment

Plaintiff showed that on or about September 13, 2010, approximately one month after he was hired, Lester Middle School Principal Grade informed plaintiff that a parent, Ms. Jump, had "concerns" about his accent. Grade directed plaintiff to speak with Jump, which he did.

8

There is no evidence plaintiff's accent impaired his teaching. Thus, jurors were authorized to infer that Grade deemed it a problem that plaintiff had an accent of which Ms. Jump disapproved, and that he was incorporating Jump's bias against plaintiff's Filipino national origin into his assessment of plaintiff's performance. *See Fonseca v. Food Services of Arizona, Inc.*, 374 F.3d 840, 848 n. 3 (9th Cir. 2004).

This inference was corroborated by Grade's subsequently taking measures to correct alleged deficiencies in plaintiff's performance, including by subjecting him to remedial supervision and reporting requirements. That Grade then terminated plaintiff less than three months after the record indicates he became aware of, and began to enforce Jump's bias against plaintiff, precluded summary judgment on plaintiff's Title VII claim. It is immaterial that Grade's enforcement of Jump's bias, rather than his own bias was a cause of the termination. *See Bostock v. Clayton County Georgia,* __U.S. __, 140 S.Ct. 1731, 1739, 207 L.Ed.2d 218 (2021).

That the termination reflected Grade's implementation of Jump's discriminatory animus is supported by the fact that days prior to the termination, Jump had another meeting with plaintiff, at which she became irate. That Jump previously had communicated with Grade about her dissatisfaction with plaintiff's teaching, and Grade promptly gave effect to

9

that dissatisfaction, the close temporal proximity of her becoming irate with plaintiff and his termination, and that in Grade's termination conference with plaintiff he echoed allegations Jump had raised against him at the meeting days before his termination justify the inference that Jump communicated with Grade about her dissatisfaction with plaintiff in that December meeting, and that communication was a proximate cause of plaintiff's termination.

Plaintiff's case further was strengthened by his evidence that defendant's justification for the termination, failure to satisfy formal DoDEA performance standards, was pretextual. First, plaintiff was terminated approximately one month prior to the scheduled completion of the "improvement plan" Grade had imposed on him. While the defense maintained plaintiff had failed to improve, plaintiff stated precisely the opposite: that he had implemented all of Grade's instructions. Since only plaintiff's evidence may be credited on summary judgment, where it conflicts with defense evidence, and evidence that a single element of the defendant's justification for its decision is unworthy of credence supports an inference of discrimination, plaintiff's statement sufficed to show defendant's justification for the termination was a pretext for discrimination.

In addition, the only measure of plaintiff's performance cited by the defense that did not turn on Principal Grade's inherently suspect subjective

10

opinion was plaintiff's failure to make weekly entry of student grades into an online program. Grade asserted such weekly entries reflected a formal contractual standard. Yet, defendant failed to adduce any written evidence of this standard, which also supports an inference of pretext. *See McGinest v. GTE Services Corp.*, 360 F.3d 1103, 1123 (9th Cir. 2004).

Plaintiff also identified substantial teaching burdens Grade had imposed upon him, that he had not imposed on the teacher who had occupied the position prior to him -- and whose performance Grade nonetheless had commended.

Plaintiff also provided detailed rebuttals to numerous specific performance defects Grade had alleged in justifying the termination. Each of these rebuttals also threw Grade's credibility into question, and thereby provided further bases for finding defendant's justification pretextual.

The district court held plaintiff failed to show pretext, since Grade was the same person who had hired him less than four months before the termination, that the fact the improvement plan had not been completed was not inconsistent with the termination having been for defective performance, and because plaintiff failed to show Grade had learned of the meeting at which Jump had become irate at plaintiff.

The "same actor" inference is inapposite, because plaintiff's claim is that Grade acted to implement Jump's bias, of which there is no reason to believe he was aware when he hired plaintiff. Additionally, plaintiff recited facts indicating that at the time he was hired, Grade likely had no choice but to hire him.

The latter two grounds cited by the court are inapposite, because they overlook plaintiff's evidence authorized the jury to find that discrimination was a "but for cause" of the termination, even if it was not the only cause. Furthermore, that the improvement plan was not concluded prior to termination was predicated on defendant's representation that plaintiff was failing to improve. As noted, plaintiff rebutted this contention. In addition, the district court ignored all of the other above-cited indicators that representations made by defendant to justify the termination were false, thereby supporting an inference of pretext.

Finally, the court's assertion that plaintiff did not show Grade knew of the meeting at which Jump became irate fails to address the above-cited evidence showing that he did know.

12

**2.      Application of the *McDonnell Douglas* Formula to Plaintiff's Evidence of National Origin Discrimination Precluded Summary Judgment**

Plaintiff stated a prima facie case of discrimination under the *McDonnell Douglas* framework by showing: 1) he was Filipino; 2) he was qualified for the position, based on his description of specific standards he satisfied and tasks he performed, (*see Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 660 (9th Cir. 2002)); 3) he was terminated; and 4) the above-noted substantial evidence that the termination occurred under circumstances suggesting discrimination based on his national origin was a cause.  *See Peterson v. Hewlett Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004).

The district court's holding that plaintiff failed to show he was qualified for the position turned on a disregard of plaintiff's evidence of specific accomplishments.   It also erroneously presupposed the credibility of defendant's evidence to the contrary.  Its holding that plaintiff failed to show a person outside his class was treated more favorably erroneously presupposed that was a necessary condition of stating a prima facie case under the *McDonnell Douglas* framework.  In fact, it is simply one means of doing so.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

13

### 3. Plaintiff's Evidence Precluded Summary Judgment on His Claim of Discrimination Under the Rehabilitation Act

Principal Grade was unaware of plaintiff's hearing loss at the time he was hired. Plaintiff showed he was terminated in violation of the Rehabilitation Act based on the following. He showed he had an actual or perceived disability of hearing loss, and that on several occasions after he was hired Grade discussed plaintiff's hearing loss with him. Plaintiff showed he was able to teach, notwithstanding the hearing loss.

His evidence showed actual or perceived hearing loss was a "but for cause" of his termination. He showed that Principal Grade admonished him for inadequately responding to the improper chiming of a student's cell phone during class, notwithstanding plaintiff's having explained that his response had been caused by his hearing impairment, and that he had implemented an alternative tactic to address the matter. A reasonable jury could have found Grade thereby expressed animus towards plaintiff due to his hearing impairment. *See Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128, 1139-1140 (9th Cir. 2001). This, combined with Grade's terminating plaintiff two weeks later supported the inference the hearing impairment or Grade's perception thereof had caused the termination, regardless of whether deficient performance also was a cause. As noted, plaintiff's evidence showed defendant's justification to be unworthy of credence.

14

The district court erroneously held plaintiff failed to show causation, because he failed to show a connection between his hearing loss and defendant's justification for the termination. The law requires no such showing; there is no necessary connection between the cause of an employer's decision and the employer's justification of the decision. The district court's contention plaintiff failed to show pretext disregards both plaintiff's evidence defendant's justification was unworthy of credence, as well as his evidence of causation.

## V. STANDARD OF REVIEW

The district court's grant of summary judgment is reviewed *de novo*. *Las Vegas Sand, LLC v. Hehme*, 632 F.3d 526, 532 (9th Cir. 2011). This requires the reviewing court to determine "viewing the evidence in the light most favorable to the nonmoving party and drawing all justifiable inferences in its favor, whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law." *Ibid*. (internal citation and quotes omitted).

# VI. ARGUMENT

## A. A REASONABLE JURY COULD HAVE FOUND THAT MR. LORENZO, WHO IS FILIPINO, WAS TERMINATED FROM HIS TEACHING POSITION TO ACCOMMODATE THE BIAS OF A PARENT AGAINST HIS NATIONAL ORIGIN

One month after Plaintiff Lorenzo was hired to be a sixth grade science teacher, a parent, Ms. Jump, complained to the school principal, Mr. Grade about Lorenzo's accent; Lorenzo is Filipino. ER-32, 130. Grade told plaintiff that Jump was "concerned" about his accent and instructed plaintiff to meet with Jump, which he did. ER-32, 40. At the meeting Jump questioned why someone with plaintiff's accent had been hired. ER-32. Grade subsequently began efforts to address alleged deficiencies in plaintiff's performance. ER-32, 132-134.

Two and one half months after his initial meeting with Jump, plaintiff met with her again and she became irate after he suggested Jump's son's difficulties in class might stem from her having caused him to miss several days of class for a vacation. ER-32. Days later, echoing Jump's complaints of poor communication with parents and inadequate student progress, Grade terminated Lorenzo. ER-32, 164.

Finding plaintiff failed to show he was qualified for the job, that another school employee was treated more favorably, and that defendant's

justification of poor job performance was pretextual, the district court granted defendant's summary judgment motion.  ER-13-14.

Title VII prohibits an employer from discharging any individual or otherwise discriminating against any individual with respect to "compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex or national origin."  42 U.S.C. § 2000e-2(a)(1).  Where an employer engages in such action, because of the individual's accent, the conduct may amount to discrimination based on national origin.  *See Fonseca v. Food Services of Arizona, Inc.*, *supra*, 374 at 848 n. 3 ("Title VII prohibits an employer from treating an employee disparately because he has an accent, unless the job requires a certain accent"); *see also Thanongsinh v. Board of Educ.,* 462 F.3d 762, 782 (7th Cir. 2006).

To prevail under Title VII an employee need not show that discriminatory intent was the only cause of the challenged employment action, but only that it was an essential cause, i.e. the decision would not have been made absent discriminatory intent.  *See Bostock v. Clayton County Georgia, supra*, 140 S.Ct. at 1739 ("a defendant cannot avoid liability just by citing some *other* factor that contributed to its challenged employment decision").

17

Moreover, an adverse employment decision based an employee's membership in a protected class violates Title VII, even where the decision is not motivated by animus, but rather to advance a legitimate non-discriminatory interest or to assuage the discriminatory animus of third party. *See id*. at 1743-1744; *see also Goodman v. Lukens Steel Co.*, 482 U.S. 656, 669 (1987) (racial discrimination by a union, even if intended to protect its bargaining power or to accommodate racial prejudice of members violates Title VII). Accordingly, discrimination against an employee to satisfy perceived customer preferences violates the statute. *See Fernandez v. Wynn Oil Co.,* 653 F.2d 1273, 1276 (9th Cir. 1981) (stereotyped customer preference does not justify sex discrimination); *Gerdom v. Continental Airlines, Inc*., 692 F.2d 602, 609 (9th Cir. 1982) (same); *Chaney v. Plainfield Healthcare Center*, 612 F.3d 908, 913 (7th Cir. 2010) ("[i]t is now widely accepted that a company's desire to cater to the perceived racial preferences of its customers is not a defense under Title VII for treating employees differently based on race"); *Williams v. G4S Secure Solutions (USA), Inc.,* No. ELH 10-3476, 2012 WL 1698282, at * 22-23 (D. Md. May 11, 2012) (staffing agency violates Title VII by respecting client's demand that it provide only male employees).

"In evaluating motions for summary judgment in the context of employment discrimination, [this Court has] emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of witnesses." *McGinest v. GTE Services Corp.*, *supra*, 360 F.3d at 1112; *see Weil v. Citizens Telecom Services, LTD*, 922 F.3d 993, 1002 (9th Cir. 2019) (same). "[B]ecause of the inherently factual nature of the inquiry, the plaintiff need produce very little evidence of discriminatory motive to raise a genuine issue of fact." *Mustafa v. Clark,* 157 F.3d 1169, 1180 (9th Cir. 1998) (internal citation and quotes omitted).

"In responding to a summary judgment motion in a Title VII disparate treatment case, a plaintiff may produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the defendant's decision, or alternatively may establish a prima facie case under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Dominguez-Curry v. Nevada Transport Dept.*, 424 F.3d 1027, 1037 (9th Cir. 2005). A plaintiff's evidence may be evaluated under both of these methods. *See Cordova v. State Farm Insurance Cos.*, 124 F.3d 1145, 1149 (9th Cir. 1997).

19

### 1. Plaintiff's Circumstantial Evidence Precluded Summary Judgment

"When a plaintiff has established a *prima facie* inference of disparate treatment through direct or circumstantial evidence of discriminatory intent -- *even if* the employer has a legitimate nondiscriminatory reason for taking the adverse employment action -- she 'will *necessarily* have raised a genuine issue of material fact with respect to the legitimacy or bona fides of the employer's articulated reason for its employment decision.'" *Machado v. Real Estate Resources, LLC*, No. 12-00544, 2013 WL 3944551, at *5 (July 30, 2013)(quoting *Cordova v. State Farm Insurance Cos.*, 124 F.3d 1145, 1150 (9th Cir. 1997)); *see also McDonnell Douglas v. Green*, *supra*, 411 U.S. at 802-805.

### a. Grade's Instructing Plaintiff to Meet With Ms. Jump to Discuss Her "Concerns" About His Accent Was Circumstantial Evidence Grade Acted to Accommodate Jump's Bias Against Plaintiff's National Origin

"Accent and national origin are obviously inextricably linked in many cases." *Fragrante v. City and County of Honolulu*, 888 F.2d 591, 596 (9th Cir. 1989). Absent evidence a particular accent is required to perform a job, adverse employment decisions based on accent amount to unlawful discrimination based on national origin. *See ibid*.; *Fonseco v. Sysco Food Services of Arizona, Inc., supra,* 374 F.3d at 848 n. 3. Negative comments about a person's accent, such as asserting it to be "weird," suffice to establish

20

bias based on national origin. *See Fonseco, supra,* 374 F.3d at 844, 849; *Thanongsinh v. Board of Educ.*, *supra*, 462 F.3d at 781-782 (for purposes of summary judgment, argumentatively admonishing a person of Asian descent that he could not be understood and should learn to speak English better establishes animus based on race).

Statements by decision makers that could be construed to indicate consideration of classifications prohibited under Title VII are circumstantial evidence of discrimination. *See Davis v. Team Electric Co.*, 520 F.3d 1080, 1092 n.7 (9th Cir. 2008); *Sampson v. Image 2000, Inc.*, No. 2:13-cv-01321, 2015 WL 1397118, at *7 (D. Nev. March 25, 2015); *Hamed v. Macy's West Stores, Inc.,* No. c-10-2790, 2011 WL 1935937, at *12 (N.D. Cal. May 20, 2012); *Curry v. Contra Costa County*, No. 12-cv-03940, 2014 WL 1724431, at *10 (N.D. Cal. April 30, 2014).

Here Principal Grade directed Plaintiff Lorenzo, whose national origin is Filipino,[4] to arrange to meet with Ms. Jump, a parent, to address her "concerns" about his accent.[5] ER 32, 40. Particularly since there was no significant evidence plaintiff's accent impaired his job performance (defendant asserts nothing to the contrary), a reasonable factfinder could

_____

4. As race, plaintiff identifies Southeast Asian, Malay, and Filipino. ER-29.
5. Grade cited Jump's concerns about difficulty her son had in understanding certain concepts as another reason for plaintiff to meet with her. ER-40.

construe Jump's "concerns" about plaintiff's accent as evidence of her animus towards him based on his national origin. *See Thanongsinh v. Board of Educ.*, *supra*, 462 F.3d at 782; *see also Dominguez-Curry v. Nevada Transport Dept.*, *supra*, 424 F.3d at 1038-1039. That inference is corroborated by the fact that when plaintiff met with Jump, as instructed by Grade, Jump treated him condescendingly, purported to "correct" his pronunciation, and stated plaintiff's accent rendered his hiring a questionable decision. ER-32.

In *Mayes v. Winco Holdings, Inc.,* 846 F.3d 1274, 1281 (9th Cir. 2017) this Court found that a reasonable jury could find a supervisor's statement that "a man would be better in this position" to have been discriminatory. Manifestly, a reasonable jury could find that Grade's directing Lorenzo to contact Jump based on her "concerns" about his accent supported the inference that Grade had thought it a problem that plaintiff had an accent of which Jump disapproved, i.e. that it would "be better" if plaintiff did not have such an accent -- and thereby that he was not Filipino. *See also Lowe v. City of Monrovia*, 775 F.2d 998, 1002-1003, 1007 (9th Cir. 1985) (suggesting black female job applicant apply to a different agency that was "begging for" minorities and females supported inference of discrimination); *Lindahl v. Air France*, 930 F.2d 1434, 1439 (9th Cir. 1991) (expressing concern about

women's proclivity to become nervous and lose control supports inference of sex discrimination).

Thus, Grade's email supported the inference that, contrary to the mandate of Title VII, Grade was incorporating Ms. Jump's bias into his assessment of Lorenzo's performance.[6]  *See Fernandez v. Wynn Oil Co., supra,* 653 F.2d at 1276.  That Grade then began interventions to correct alleged deficiencies in plaintiff's performance, including downgrading his standing by placing him on an "improvement plan," pursuant to which Lorenzo was subject to additional supervision and reporting duties corroborates that inference.  ER-32, 132-134; *see Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).

**b.    Grade's Terminating Lorenzo Less Than Three Months After Indicating His Intent to Enforce Jump's Bias Against Him Authorized the Jury to Find the Termination Was Discriminatory; That the Termination Closely Followed A Meeting at Which Jump Became Irate With Plaintiff Underscores that Conclusion**

Close temporal proximity between an employer's discovery of an employee's membership in a protected class and the employer's subjecting the employee to adverse action suffices to raise a triable question of fact about whether the adverse action was unlawful discrimination.  *See Arriaza v.*

_____

6. Plaintiff's observation that Ms. Jump's husband held a high rank, and that parents of high rank exercise influence in schools serving military families further supports this inference.  ER-32.

23

*Leggett & Platt, Inc.*, No. CV-09-2242, 2009 WL 10674330, at * 2 (C.D. Cal. Nov. 9, 2009); *see also Buhrman v. Aureus Medical Group*, 519 F.Supp.3d 923, 931 (D. Colo. 2021).

Cases of unlawful employment discrimination based on participation in protected activities also apply this rule and thereby provide guidance in its application.[7]  *See Passantino v. Johnson & Johnson Consumer Products, Inc.*, 212 F.3d 493, 507 (9th Cir. 2000) ("when adverse employment decisions are taken within a reasonable period of time after complaints of discrimination have been made, retaliatory intent may be inferred").   "Depending on the circumstances, three to eight months is easily within a time range that can support an inference of retaliation." *See Coszalter v. City of Salem*, 320 F.3d 968, 977-978 (9th Cir. 2003) (reversing summary judgment for employer where adverse actions closely followed protected conduct and employee adduced evidence showing a justification for the adverse action was unworthy of credence); *Bell v. Clackamas County*, 341 F.3d 858, 865-867 (9th Cir. 2003) (temporal proximity of adverse actions to protected conduct

---

7. "Normally temporal proximity is analyzed in the context of retaliation." *Buhrman v. Aureus Medical Group*, *supra*, 519 F.Supp.3d at 931.

and evidence authorizing inference of hostility by decisionmaker sufficed to affirm finding of retaliation).[8]

There is no reason to believe Grade had discovered Jump's bias against plaintiff substantially prior to his September 13, 2010 email instructing plaintiff to contact Jump about his accent. Thus, it is reasonable to infer he first learned of Jump's bias on or about that date. Since the email supported inferences that Grade both discovered Jump's bias on or about that date and that he elected to apply Ms. Jump's bias to the assessment of Lorenzo's performance on or about that date, a reasonable jury could infer that the relatively short time lapse between the email and Grade's terminating plaintiff in December 2010, less than three months, established that Grade's enforcement of Jump's bias against plaintiff's national origin was a cause of the termination. These facts thereby sufficed to preclude summary judgment on this claim. *See Passantino v. Johnson & Johnson Consumer Products, Inc.*, *supra*, 212 F.3d at 507.

Additional facts underscore this conclusion. Days prior to his termination, plaintiff again met with Jump to discuss her son's falling behind

---

8. *Coszalter* involved a claim of retaliation under the First Amendment; it employed the same three step method to identify a prima facie case of retaliation used under Title VII. *See Coszalter v. City of Salem*, *supra*, 320 F.3d at 973.

in his class. ER-32. Plaintiff suggested this problem may have been a consequence of Jump having caused her son to miss considerable class time to take a vacation. ER-32. Jump became irate in response. ER-32.

Surrounding circumstance indicate Jump conveyed her anger at plaintiff to Grade and thereby provided further impetus into Grade's decision to terminate plaintiff. *See Hernandez v. Spacelabs Medical, Inc.*, 343 F.3d 1107, 1113-1114 (9th Cir. 2003).

Grade's September 13th email directing Lorenzo to address Jump about her concerns demonstrates she previously, and, as of December 2010, relatively recently, had been motivated to communicate with Grade about her dissatisfaction with Lorenzo and in fact had done so. There is no reason to believe her motive or opportunity to apprise Grade of her dissatisfaction with Lorenzo was any less operative following her early December meeting with Lorenzo. As noted that September 13th email, and subsequent interventions to correct plaintiff's alleged performance deficiencies leading to imposition of the "improvement plan," established Grade's determination to subject plaintiff to Jump's bias against him.

Second, the extremely close temporal proximity of Jump's expressing anger towards plaintiff and his termination, a matter of days, supports both the inference that Jump had communicated her anger to Grade in the

December meeting, and that he, in turn had acted thereon. *See Jute v. Sundstrand Corp.*, 420 F.3d 166, 175 (2nd Cir. 2005); *see also Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163-1164 (11th Cir. 1993).

Third, that in his termination conference with plaintiff, Grade echoed Jump's complaints of poor communication with parents and inadequate student progress, also supported the inference that Jump had complained to Grade about that meeting, and that complaint was a proximate cause of Grade's termination decision. ER-32.

There was, therefore, ample evidence from which a reasonable jury could conclude Grade fired plaintiff, to enforce Ms. Jump's bias against plaintiff's national origin.

**c. Grade's Questionable Explanation for Terminating Plaintiff Before Completion of the Improvement Plan, His Denying Plaintiff's Contention that He Implemented All Grade's Suggestions, His Requiring More Work of Plaintiff Than Plaintiff's Predecessor, and Plaintiff's Teaching Accomplishments Each Authorize Finding Defendant's Justification to Be Pretextual**

Evidence showing defendant's justification unworthy of credence also supports the inference of discrimination. *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 147 (2000). Indeed, showing a single element of the defendant's justification to be unworthy of credence supports an inference of discrimination, since it constitutes grounds for doubting the truthfulness of

the entirety of the defendant's explanation. *See Coszalter v. City of Salem*, *supra*, 320 F.3d at 978; *Burns v. AAF McQuay, Inc.*, 96 F.3d 728, 733-734 (4th Cir. 1996). Where a large organization justifies an adverse employment decision by reference to its policy, and that policy is not written, it is reasonable to infer the justification is false. *See McGinest v. GTE Service Corp.*, *supra*, 360 F.3d at 1123. Where there is reason to doubt the credibility of the decisionmaker, the decisionmaker's reliance on subjective judgment to justify his decision supports an inference of pretext. *See Juaregri v. City of Glendale*, 852 F.2d 1128, 1135-1136 (9th Cir. 1988).

Here, there were several reasons jurors reasonably might have found defendant's justification for the termination, that Lorenzo's performance was deficient, to have been unworthy of credence. ER 164-165. First, at the time of his December 13, 2010 termination, plaintiff was working on an informal "improvement plan" that was scheduled to conclude January 26, 2011. ER-42. Defendant justified its decision to terminate plaintiff prior to the conclusion of the improvement plan on the grounds that plaintiff was failing to improve. ER 26-27.

Yet, plaintiff's statement, which must be credited on summary judgment, is that he had implemented all Grade's instructions for improvement. ER-29; *see Reeves v. Sanderson Plumbing Products, Inc.*,

*supra,* 530 U.S. at 150-151.  Moreover, at plaintiff's last weekly meeting with Grade, on December 3, 2010, Grade expressed satisfaction with plaintiff's progress in implementing his recommendations.  ER-29.  This, of course, also undermines the plausibility of the defendant's justification.

In addition, a principal reason cited by Grade for the termination was plaintiff's failure to provide sufficient entries of student grades into Gradebook.[9] ER-102 [30:11-15], 107 [53:3-4], 164.  While Grade asserted weekly entries into Gradebook was a formal requirement, defendant failed to identify any document supporting Grade's claim.  ER-106 [48:22- 49:6], 107 [50:18-22, 52:2-4]  The absence of a document memorializing this putatively key duty is in itself sufficient reason to find the explanation pretextual.  *See McGinest v. GTE Service Corp.*, *supra*, 360 F.3d at 1123.   That the other factors on which defendant justified its decision were subjective, e.g., lesson plans' inclusion of activities allowing students to analyze, synthesize, and evaluate the objectives and standards being taught, use of proper strategies to check for student learning, students understanding why they were learning what was being taught, provided additional reason for a factfinder to conclude the justification was pretext.  ER-164; *see Juaregri v. City of Glendale*, *supra*, 852 F.2d at 1135-1136.

9. Grade explained the terms "Gradebook" and "Gradespeed" are used interchangeably.  ER-102 [30:11-18]

Furthermore, plaintiff stated that Grade imposed materially greater teaching demands on him than he had on plaintiff's predecessor -- whose compliance with DodEA standards Grade nonetheless had commended. ER 33. Specifically, Lorenzo's predecessor had been required to do no more than have students do a science project between August and December, while Grade required Lorenzo to have weekly lessons in addition to the science project. ER-30, 33. Grade also authorized plaintiff's predecessor to use commercially prepared warm-up exercises in her classroom routine, but criticized Lorenzo for using those same exercises and required Lorenzo develop his own warm-up exercises, which he did. ER-30, 33. Such differential treatment also supports an inference of discrimination.[10]

_____

10. Plaintiff rebutted other claims of defective performance with which defendant had charged him.

At the termination conference Grade complained that seventh and eighth graders were doing the same warm-up exercises and lab. ER-30. Plaintiff explained this was proper, because the same exercises served their differing tasks. ER-30-31. The seventh graders used them to study the physical and chemical changes of matter and the eighth graders used them to identify the chemical composition of the substance they observed when testing for carbonate in rocks. ER-31.

The termination notice asserted plaintiff's lesson plan did not include activities allowing students to analyze, synthesize and evaluate the standards he was teaching. ER-164. Plaintiff showed Grade the overarching lesson plan in the science projects on which his students were working. ER-31. In fact the assignments did allow students to engage in precisely those activities, consistent with a DodEA standard. ER-31.

The termination notice stated plaintiff did not use proper strategies to

Plaintiff's evidence, thereby, far exceeded the threshold that would authorize reasonable jurors to find defendant's justification for the termination unworthy of credence. See *Reeves v. Sanderson Plumbing*, *supra* 530 U.S. at 147.

---

check for student learning. ER-164. Plaintiff showed Grade the strategy was laid out in the textbook they used, which included a section assessment every few pages. ER-31. Plaintiff's students performed these assessments and recorded them in their science journals. ER-31.

The notice of termination stated that plaintiff did not provide students sufficient assignments to measure learning and proficiency of objectives and standards. ER-164. Plaintiff referred Grade to the science project of the struggling students, an assignment that was more than sufficient to accomplish this. ER-31. Grade had approved this as adequate for plaintiff's predecessor. ER-31.

The termination notice stated that plaintiff failed to uphold established classroom procedures and routines. ER-164. Plaintiff provided specific examples to the contrary, of cases in which students were failing to stay on task in class, and the constructive ways in which he addressed those cases. ER-31.

The termination notice also asserted he failed to communicate adequately with parents. ER-164. Plaintiff asserted that he did. ER-29.

Plaintiff also noted that when Grade had placed him on the intervention plan, he and the faculty representative spokesperson had stipulated that Ms. Kimmel, a teacher who previously had advised plaintiff and with whom he worked well, would be one of the observers of his classes. ER-31. Grade made no objection, but he did not ask Kimmel to assess plaintiff's work. ER-31. His failure to do so, without providing any reason, authorized the inference Grade wished to exclude evaluators who might produce positive assessments of plaintiff's performance.

**d.   The District Court's Holding Plaintiff Failed To Adduce Evidence to Support an Inference of Discrimination Based on His National Origin Disregards the Evidence Defendant Fired Plaintiff in Order to Accommodate the Bias of Ms. Jump and the Evidence Defendant's Justification for the Termination Was Unworthy of Credence**

The district court found plaintiff's evidence insufficient to show defendant's justification for the termination was pretextual,[11] because: 1) it did not rebut the presumption that Grade's having hired him and fired him within a short period of time showed the firing was not discriminatory; 2) that plaintiff's "intervention plan" had not been completed was not inconsistent with defendant's contention that he was terminated for inadequate performance; and 3) plaintiff failed to show Grade was aware of his December 2010 conversation with Ms. Jump.  ER-14-15.  None of these grounds justified the district court's holding.

The first ground is inapposite, because the "same actor" presumption turns on the proposition that if a person was motivated by discriminatory animus against the class to which the plaintiff belonged, the actor would not have hired the plaintiff in the first place.  *See Coughlan v. Am. Seafoods, Co., LLC*, 413 F.3d 1090, 1097 (9th Cir. 2007).   Plaintiff's claim, however, turns on the proposition that Grade discriminated against plaintiff in order to accommodate Ms. Jump's bias-- not his own bias.  *See supra* at 20-23.  There

11. Plaintiff addresses the district court's findings he failed to state a prima facie case under the *McDonnell Douglas* framework below, in his argument showing that he did.  *See infra* at 35-38.

is no reason to believe Grade was aware of Jump's bias at the time he hired plaintiff. Thus, there is no reason to believe the bias alleged to have caused plaintiff's termination would have been operative at the time of his hiring.

Additionally, plaintiff stated that at the time of his hiring, it appeared he was the only remaining qualified candidate who was local to Japan and that candidates living in Japan were given hiring priority over applicants from the United States. ER-31-32. Additionally, time was short, since school was to begin the following week. ER-32. Defendant denies none of these propositions nor does defendant show any logical flaw in plaintiff's inference from these propositions that Grade consequently almost was obligated to hire him.[12] For this reason also, the notion that any bias against plaintiff due to his nationality would have prevented Grade from hiring him in the first place is inapposite.

The second and third grounds are inapposite for several reasons. First, they disregard that Grade's September 13th email to plaintiff sufficed to show he was enforcing Jump's bias against plaintiff's national origin, and that in light thereof, his termination of plaintiff within three months

authorized a _____

[12.] Neither did defendant deny that plaintiff was asked to bring his transcripts to the job interview and that this is something that typically only is asked of applicants after a decision to hire has been made. ER-33. Similarly, defendant adduces no challenge to plaintiff's reasoning that this fact also indicates Grade almost had no choice but to hire him. ER-33.

33

jury to find that enforcement was a cause of the termination, regardless of whether inadequate performance also was a cause or whether Grade had known of the December conversation with Jump. *See also Cordova v. State Farm Insurance Cos.*, *supra*, 124 F.3d at 1150 (pretext also can be shown by evidence that the truth of the defendant's justification for the challenged decision does not necessarily entail discrimination was not also a cause).

The second ground is also immaterial, because defendant justified its decision to terminate plaintiff prior to the conclusion of the improvement plan on the grounds that plaintiff was failing to improve. ER-165. Since plaintiff maintained that he had implemented all Grade's instructions for improvement, this created a material question of fact, which only could be resolved by the jury. ER-28; *see Reeves v. Sanderson Plumbing*, *supra*, 530 U.S. at 150-151.

Relatedly, the second ground disregards the above-cited evidence authorizing jurors to find defendant's justification unworthy of credence.

The third ground, that plaintiff failed to show Grade knew of the December meeting between him and Jump, is inapposite for the additional reason that it disregards the above-cited circumstantial evidence authorizing the inference that he did know.

## 2. Plaintiff Established a Case of Discrimination Based on the *McDonnell Douglas* Framework

To establish a prima facie case of discrimination employing the *McDonnell Douglas* framework entails adducing evidence that 1) the plaintiff was a member of a protected class; 2) he was qualified for the position; 3) he was subject to an adverse employment action; and 4) similarly situated individuals outside his protected class were treated more favorably **or** the adverse action occurred under other circumstances suggesting discrimination was a causal factor. *Peterson v. Hewlett Packard Co.*, *supra*, 358 F.3d at 603.

However, "the precise requirements of a prima facie case can vary depending on the context and were never intended to be rigid, mechanized, or ritualistic." *Swierkiewicz v. Sorema N.A.*, *supra*, 534 U.S. at 512.

Evidence of the plaintiff's national origin is sufficient to show membership in a protected class. *See, e.g., Donaire v. NME Hospital, Inc.,* 27 F.3d 507, 509 (11th Cir. 1994). Plaintiff established this with evidence that he is Southeast Asian, Malay and Filipino. ER-29.

The plaintiff may establish his qualification for the position by reporting facts indicating that he was performing his job successfully. *See Aragon v. Republic Silver States Disposal Corp.*, *supra*, 292 F.3d at 660 (sanitation worker's report of circumstances, including that his performance equaled that of co-workers, and that he brought in an average amount of

35

garbage, established his qualification for position); *Yarborough v. Tower Oldsmobile, Inc.*, 789 F.2d 508, 512 (7th Cir. 1986) (employee's assertion that the general quality of his work was satisfactory suffices to establish his qualification for the position); *MacDonald v. Eastern Wyoming Mental Health Center*, 941 F.2d 1115, 1121 (10th Cir. 1991) (employee's testimony her work was satisfactory suffices to show she was qualified for purposes of a prima facie case of discrimination). The circumstances described above in plaintiff's rebuttal of defendant's justification for the termination establish he was qualified for the position. *See supra* at 28-31.

Termination, of course, amounts to an adverse employment action.

Finally, plaintiff satisfied the fourth condition by adducing ample evidence indicating the adverse action occurred under circumstances suggesting discrimination was a causal factor. *See supra* at 20-31. Plaintiff therefore established a prima facie case of discrimination.

Under the *McDonnell Douglas* framework where the plaintiff establishes a prima facie case of discrimination, he is entitled to prevail, unless the employer adduces evidence of "a legitimate, non-discriminatory reason" for the challenged action. *Reeves v. Sanderson Plumbing*, *supra*, 530 U.S. at 142. If the employer satisfies this condition, to overcome summary judgment the plaintiff must show the employer's justification to be a pretext

for discrimination by presenting evidence that a discriminatory reason more likely motivated the employer or by showing that the employer's proffered reason is unworthy of credence. *Davis v. Team Electric Co.*, *supra*, 520 F.3d at 1089.

As shown plaintiff's evidence also established pretext. *See supra at* 27-31.

The district court held that plaintiff failed to establish a prima facie case of discrimination, because he showed neither that he was performing adequately nor that a person in a non-protected class was treated better. ER-13-14. In holding the plaintiff failed to show adequate job performance, the court disregarded the above-cited evidence to the contrary -- which it was obligated to credit on summary judgment. *See Reeves v. Sanderson Plumbing*, *supra*, 530 U.S. at 150-151. In addition, it credited defendant's evidence, which, since plaintiff had adduced evidence showing it to be unworthy of credence, and specifically creating reason to doubt the veracity of Principal Grade, defendant's only material witness, was not permitted on summary judgment. *Id.* at 151

As to the second reason, as noted, a plaintiff satisfied this fourth *McDonnell Douglas* condition for a prima facie case by showing the discharge occurred under circumstances suggesting discrimination. Showing

a similarly situated person outside his class was treated more favorably is simply one of the ways in which this fourth condition could have been satisfied. *See Peterson v. Hewlett Packard Co.*, *supra*, 358 F.3d at 603. It is not the only way. *See Swierkiewicz v. Sorema N.A.*, *supra*, 534 U.S. at 512.

As noted, the district court's determination plaintiff's evidence failed to establish pretext was mistaken. Plaintiff, thereby, also established his right to proceed to trial under the *McDonnell Douglas* framework.

## B.    A REASONABLE JURY COULD HAVE FOUND THAT MR. LORENZO WAS TERMINATED FROM HIS TEACHING POSITION, BECAUSE OF HIS HEARING IMPAIRMENT OR THE PERCEPTION HIS HEARING IS IMPAIRED

Principal Grade was not aware that plaintiff was suffering hearing loss until after he had hired him. ER-131. While observing plaintiff's classroom in November 2010, a student's cell phone chimed and, because of his hearing loss, plaintiff could not determine to which student the phone belonged. ER-32. After class plaintiff was able to elicit the identity of the phone's owner from another student, and he then confiscated the phone. ER-33.

Grade expressed dissatisfaction with plaintiff for failing to confiscate the phone immediately, even though he understood the failure to have been the result of plaintiff's hearing loss. ER-33. Grade terminated plaintiff two weeks later. ER-33. The district court granted defendant's summary

judgment motion on the grounds that plaintiff failed to show his termination was caused by his perceived disability and failed to show defendant's justification was pretextual. ER-16-17.

The Rehabilitation Act prohibits any program or agency conducted by any Executive agency and any program or activity receiving Federal financial assistance from discriminating against any individual in employment, because of such individual's disability. 29 U.S.C. § 794(a). The standards used to determine whether alleged employment discrimination violates the Rehabilitation Act are the same standards applied under the American's With Disabilities Act (ADA). *See Coons v. Sec'y of the Treasury*, 383 F.3d 879, 884 (9th Cir. 2004) (citing 29 U.S.C. § 794(d)). Moreover, the methods and manner of proof employed in Title VII employment discrimination cases are equally applicable to cases brought under the ADA and the Rehabilitation Act. *See Wishkin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007); *see also Boose v. Tri-County Metropolitan Trans. Dist. of Oregon,* 587 F.3d 997, 1001 n.5 (9th Cir. 2009).

To prove an employment decision violated the ADA (and thereby the Rehabilitation Act)[13], a plaintiff must show he was 1) disabled or perceived as disabled within the meaning of the ADA, 2) that he is qualified with or

---

13. It is undisputed defendant is obligated to comply with the Rehabilitation Act.

without reasonable accommodation to perform the essential functions of the job and; 3) that the employer terminated him because of the disability. *See Kennedy v. Applause,* 90 F.3d 1477, 1481 (9th Cir. 1996).

Plaintiff is disabled, because he suffers hearing loss that, *inter alia*, reduces his ability to hear questions from students. ER-31. The district court found plaintiff was, at least, perceived as having such disability. ER-16.

It is undisputed that plaintiff's hearing impairment did not prevent him from performing the essential functions of the job. ER-16.

The following circumstances show plaintiff's disability or perceived disability was a cause of his termination. Grade did not discover plaintiff's hearing impairment until September 2010, after his hiring, when he asked plaintiff whether the rumor concerning his hearing impairment was true, which plaintiff confirmed. ER-32.

Then in November 2010, while Grade was observing plaintiff's class, the cell phone of a student chimed. ER-32. Due to plaintiff's hearing impairment, he was unable to determine to whom the cell phone belonged, and therefore did not immediately take the phone from the student. ER-32. Instead plaintiff talked in the direction from which the sound was coming, told the student to see him after class, and continued with the instruction. ER-32-33. Then by discretely gathering information from a student who

normally would fear being called a "snitch," plaintiff was able to confiscate the cell phone from its owner at the end of class. ER-33.

Grade nonetheless excoriated Lorenzo for failing to confiscate the phone immediately, and inquired again about his hearing. ER-33. Lorenzo explained that he successfully caused the student to surrender his phone, and that his method of doing so was the means by which he coped with his hearing impairment. ER-33. Grade was dissatisfied with plaintiff's answer. ER-33.

Manifestly a reasonable jury could have determined that plaintiff's handling of the situation to have been, precisely as he represents it, an appropriate means of coping with his hearing impairment. Defendant suggests nothing to the contrary. A reasonable jury also could have found that in expressing dissatisfaction with plaintiff's handling of the situation, Grade effectively expressed dissatisfaction with, and therefore animus towards plaintiff's having a hearing impairment. *See Humphrey v. Memorial Hospitals Ass'n*, *supra*, 239 F.3d at 1139-1140 ("[f]or purposes of the ADA, with a few exceptions, conduct resulting from a disability is considered to be part of the disability…"). This, therefore, constituted at least circumstantial evidence of discriminatory animus based on plaintiff's hearing impairment or

perceived hearing impairment. *See Davis v. Team Electric Co.*, *supra*, 520 F.3d at 1092 n. 7.

This evidence combined with Grade having terminated plaintiff only two weeks after this incident sufficed to authorize a reasonable jury to conclude that plaintiff's actual or perceived hearing impairment was a cause of his termination, regardless of the merits of defendant's contention that plaintiff's performance was inadequate. *See Passantino v. Johnson & Johnson Consumer Products, Inc.*, *supra*, 212 F.3d at 507. Moreover, as noted, plaintiff's evidence sufficed to show that defendant's justification of poor performance was unworthy of credence.

The district court held that plaintiff failed to show his perceived disability was a cause of his termination, because there was no connection between plaintiff's ability to hear and the stated reason for his termination. ER-16. The court thereby mistakenly presumed the law required plaintiff show his disability was alluded to in the employer's stated justification for the termination. As noted, it requires instead that the plaintiff show his disability caused his termination. *See Kennedy v. Applause, supra*, 90 F.3d at 1481. Plaintiff's evidence, disregarded by the district court, shows precisely that.

42

In the alternative, the court held plaintiff failed to show the defendant's justification pretextual. As shown, plaintiff's evidence of causation demonstrated the justification to have been insufficient to show his disability was not a cause of the termination. Plaintiff also has shown that defendant's justification was not worthy of credence.

Accordingly, the court also erred in granting summary judgment to the defendant on plaintiff's claim under the Rehabilitation Act.

## CONCLUSION

The judgment of the district court granting summary judgment on plaintiff's respective claims for discrimination in violation of Title VII and for discrimination in violation of the Rehabilitation Act must be reversed.

Dated: March 25, 2022                        Respectfully submitted,

                                             Randy Baker /s/
                                             Attorney for Appellant
                                             Virgil Lorenzo

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 21-56381

I am the attorney or self-represented party.

**This brief contains** | 9,224 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

ⵙ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ○ it is a joint brief submitted by separately represented parties;

    ○ a party or parties are filing a single brief in response to multiple briefs; or

    ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____ .

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | Randy Baker /s/     **Date** | March 25, 2022
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

---

**Form 8**                             *Rev. 12/01/2018*